# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IRON WORKERS DISTRICT COUNCIL (PHILADELPHIA AND VICINITY) RETIREMENT AND PENSION PLAN, Individually and on Behalf of All Others Similarly Situated, | CASE NO. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| THE KRAFT HEINZ COMPANY, BERNARDO HEES, PAULO BASILIO, DAVID H. KNOPF, GEORGE EL-ZOGHBI, CHRISTOPHER R. SKINGER, VINCE GARLATI, and 3G CAPITAL INC., | |
| Defendants. | |

Plaintiff Iron Workers District Council (Philadelphia and Vicinity) Retirement and Pension Plan ("Plaintiff"), by and through its undersigned counsel, brings this action on behalf of itself and all other similarly situated investors who purchased or otherwise acquired the publicly traded securities of Kraft Heinz Company ("Kraft Heinz" or the "Company"), during the period from July 6, 2015 through February 21, 2019 (the "Class Period"), for violations of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), respectively, and the rules and regulations promulgated thereunder, including United States Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5 (collectively, such investors are referred to herein as the "Class").

This action is brought against Kraft Heinz and certain officers of the Company: Bernardo Hees ("Hees"), the Company's Chief Executive Officer ("CEO") since its formation in July 2015; Paulo Basilio ("Basilio"), the Company's Chief Financial Officer ("CFO") and Executive Vice

President from June 2015 until October 1, 2017; David H. Knopf ("Knopf"), the Company's CFO and Executive Vice President since October 1, 2017; George El-Zoghbi ("El-Zoghbi"), the Company's Chief Operating Officer ("COO") of U.S. business until October 1, 2017, when he became a full-time Special Advisor, working with the Company's Board of Directors and Defendants Hees and Basilio; Christopher R. Skinger ("Skinger"), the Company's Vice President Global Controller and Principal Accounting Officer until June 18, 2018; and Vince Garlati ("Garlati"), the Company's Global Controller and Principal Accounting Officer since June 18, 2018. This action is also brought against 3G Capital Inc. ("3G"), one of the Company's largest shareholders and an entity that had significant involvement in the Company's management. Kraft Heinz, Hees, Basilio, Knopf, El-Zoghbi, Skinger, Garlati and 3G are collectively referred to herein as the "Defendants." Except as to allegations specifically pertaining to Plaintiff, all allegations herein are based upon the continuing investigation by Plaintiff's counsel, which includes, but is not limited to, reviewing and analyzing: (i) Kraft Heinz's public filings with the SEC; (ii) press releases and other public statements issued by Defendants; (iii) research reports by securities and financial analysts; (iv) media and news reports concerning Kraft Heinz; (v) transcripts of Kraft Heinz's earnings and other investor conference calls and related presentations; (vi) regulatory filings, reports and correspondence; and (vii) other publicly available information concerning Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.      INTRODUCTION

1.      The action concerns multiple statements by Defendants misleading investors regarding the Company's value and business prospects from July 6, 2015, the effective date of the Company's formation after the merger of Kraft Foods Inc. ("Kraft") and The H.J. Heinz Company

("Heinz"), through February 21, 2019, when the Company wrote down the value of its Kraft and Oscar Mayer brands by a massive $15 billion.

2. Kraft Heinz is one of the largest food and beverage companies in the world with sales in approximately 190 countries and territories. The Company manufactures and markets food and beverage products, through its numerous iconic brands, including Heinz, Kraft, Oscar Mayer, Philadelphia, Velveeta, Lunchables, Planters, Maxwell House, Capri Sun, Ore-Ida, Kool-Aid, Jell-O, and many others.

3. In conjunction with the formation of Kraft Heinz, on April 10, 2015, Heinz filed a preliminary registration statement and prospectus on Form S-4 with the SEC, with respect to the shares of Heinz common stock to be issued to Kraft shareholders pursuant to the merger agreement. The Form S-4 praised the merger stating the benefits included "enhanced competitive and financial position, increased diversity and depth in its product line and geographic areas . . . and the potential to realize, according to Heinz management, an estimated $1.5 billion in annual cost savings from the increased scale of the new organization, the sharing of best practices and cost reductions by the end of 2017." Moreover, the Form S-4 highlighted "3G Capital's strong track record in achieving significant cost reduction and margin improvement in companies under its management."

4. Over the next several years, the Company continually touted its cost cutting initiatives while simultaneously indicating its plans to grow overall revenue numbers. At no time between 2015 and late 2018, did the Company suggest its Kraft and Oscar Mayer brands were impaired in a material way.

5. Notwithstanding these representations and omissions, Kraft Heinz's financial story began to change in late 2018. On November 1, 2018, the Company announced disappointing third

quarter fiscal 2018 financial results, in which the Company's earnings per share ("EPS") of $0.78 fell short of consensus estimates by nearly 4%, and the Company's earnings before interest, tax, depreciation and amortization ("EBITA") missed analysts' consensus by approximately $100 million, or 7%. Despite this news, Defendant Hees continued to assure investors that the Company was "confident our Q3 results show that the turnaround of our top line performance is firmly underway, not just in terms of headline organic growth but also real volume growth." Defendant Hees added, "we are equally confident that profitability will improve going forward, as one-off negative factors from Q3 fall away. . . that are in the path to sustainable, profitable growth, and driven by the fact that we are adapting the company with speed." Despite Defendants' attempts to assuage shareholder concerns, the price of Kraft Heinz common stock fell 9.7% in response to the poor results, from a close of $56.20 per share on November 1, 2018, to close at $50.73 per share on November 2, 2018.

6.     Unbeknownst to shareholders and the public, a massive write down was just around the corner. On February 21, 2019, the Company announced poor financial results for the fourth quarter and full year of 2018. Specifically, the Company reported an EPS of $0.84, which was $0.10 below consensus estimates, and revenues of $50 million, also below consensus expectations. Most significantly, the Company recorded non-cash impairment charges of $15.4 billion related to goodwill and intangible assets. Kraft Heinz stated that the impairment in tangible assets was driven "primarily [by] the Kraft and Oscar Mayer trademarks," and the goodwill write down was due "primarily [to] U.S. Refrigerated and Canada Retail."

7.     The Company also disclosed that in October 2018, it received a subpoena from the SEC associated with "an investigation into the Company's procurement area, more specifically the Company's accounting policies, procedures, and internal controls related to its procurement

function, including, but not limited to, agreements, side agreements, and changes or modifications to its agreements with its vendors." As a result, the Company stated it recorded a $25 million increase to costs of goods sold ("COGS") due to its misstatement of previous COGS figures. Lastly, Kraft Heinz announced that the Company's quarterly dividend was decreased by $0.225, to $0.40 per share.

8. Over the course of one day, and in response to this double-barreled news of a massive write down and an SEC investigation, the price of Kraft Heinz common stock fell over 27%, from a close of $48.18 per share, to close at $34.95 per share on February 22, 2019.

9. The Complaint alleges that throughout the Class Period, Defendants made materially false, and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically: (i) Defendants misrepresented that the Zero Based Budgeting ("ZBB") and other cost-saving measures would deliver increased profitability while simultaneously maintaining base business momentum; (ii) Defendants failed to disclose known trends that were negatively impacting the Company's organic sales growth and profitability; (iii) Defendants falsely represented the ability of the Company's pipeline of new products to generate organic growth; (iv) Defendants falsely stated that "main-stays like Oscar Mayer [and] Kraft cheese" were "tangible drivers of [a] turnaround in the second half of 2018"; (v) Defendants failed to disclose known trends that resulted in the intangible asset impairments associated with the Company's Oscar Mayer and Kraft brands; and (vi) Defendants failed to disclose known trends that resulted in the goodwill impairments affecting its U.S. Refrigerated and Canada Retail divisions. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects following the merger were materially false and/or misleading and/or lacked a reasonable basis.

10. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class Members suffered damages.

## II. JURISDICTION AND VENUE

11. The claims asserted herein arise under Sections 10(b), 20(a) and 20A of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

13. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b). The Company conducts business and maintains one of its headquarters in this District, and many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this District.

14. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets. Kraft Heinz's common stock trades on an efficient market, the NASDAQ Global Select Market ("NASDAQ"), under the ticker symbol "KHC."

## III. PARTIES

15. Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, purchased Kraft Heinz common stock at artificially inflated prices during the Class Period and has been damaged thereby.

16. Defendant Kraft Heinz is a Delaware corporation with one of its headquarters located at 200 East Randolph Street, Suite 7600, Chicago, Illinois 60601.

17.     Defendant Hees has served as the Company's CEO since its formation in July 2015.

18.     Defendant Basilio served as the Company's CFO and Executive Vice President from June 2015 until October 1, 2017.

19.     Defendant Knopf has been the Company's CFO and Executive Vice President since October 1, 2017.  Prior to this position, Knopf joined Kraft Heinz in July 2015, serving as Vice President of Finance, Head of Global Budget & Business Planning, ZBB, and Financial & Strategic Planning.

20.     Defendant El-Zoghbi served as Kraft Heinz's COO of U.S. business until October 1, 2017, when he became a full-time Special Advisor to the Company working with the Kraft Heinz Board of Directors and Defendants Hees and Basilio.

21.     Defendant Skinger served as Kraft Heinz's Vice President Global Controller and Principal Accounting Officer until June 18, 2018, when he resigned from the Company.

22.     Defendant Garlati has served as Kraft Heinz's Vice President Global Controller and Principal Accounting Officer since June 18, 2018.

23.     Defendant 3G is a private equity firm specializing in buyout investments in brands and businesses in the retail and consumer sectors.  During the Class Period, Defendant 3G, and its affiliates, including 3G Global Food Holdings, L.P. and 3G Capital Ltd., were one of the largest beneficial owners of Kraft Heinz common stock.

24.     Defendants Hees, Basilio, Knopf, El-Zoghbi, Skinger and Garlati, are collectively referred to hereinafter as the "Individual Defendants."

25.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Kraft Heinz's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers, and institutional investors, *i.e.*,

the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each Individual Defendant knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were materially false and/or misleading.

26.     As officers and controlling persons of a publicly-held company whose common stock is registered with the SEC pursuant to the Exchange Act and trades on the NASDAQ, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, business, products, markets, management, controls, brands, sales and costs trends and present and future business prospects.  In addition, the Individual Defendants each had a duty to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information.  Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

27.     Each Defendant is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Kraft Heinz common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Kraft Heinz's business, operations, products, markets, management, brands, controls, sales and cost trends, demands, present and future business prospects, and the intrinsic value of Kraft Heinz common stock; (ii) enabled an

affiliate of Defendant 3G to sell more than $1.2 billion of Kraft Heinz common stock at an artificially inflated price; and (iii) caused Plaintiff and the Class to purchase Kraft Heinz publicly-traded common stock at artificially inflated prices.

## IV. SUBSTANTIVE ALLEGATIONS

### A. Background and Merger

28.     On July 2, 2015, Kraft Heinz was formed through the merger of Kraft and Heinz. Prior to the merger, Kraft was a publicly-traded company and Heinz was jointly owned by Berkshire Hathaway Inc. ("Berkshire") and 3G Global Food Holdings, L.P., a subsidiary of 3G, a Brazilian-American multibillion-dollar investment firm.  Presently, Kraft Heinz is the third-largest food and beverage company in North America and the fifth-largest in the world, with annual sales of over $26 billion.   Kraft Heinz operates in approximately 190 countries and territories. Additionally, the Company boasts a portfolio of over twenty-five iconic brands, which includes Heinz, Kraft, Oscar Mayer, Philadelphia, Velveeta, Lunchables, Planters, Maxwell House, Capri Sun, Ore-Ida, Kool-Aid, Jell-O, and many others.

29.     Prior to the merger, Kraft manufactured and marketed food and beverage products, including cheese, meats, refreshment beverages, coffee, packaged dinners, refrigerated meals, snack nuts, dressings, and other grocery products, primarily in the United States and Canada. While Heinz manufactured and marketed an extensive line of food products, including ketchup, condiments and sauces, frozen food, soups, beans and pasta meals, infant nutrition, and other food products.

30.     Following the merger, Heinz's controlling shareholders, Berkshire and 3G, owned approximately 51% of the outstanding shares of Kraft Heinz common stock, with Kraft shareholders owning the remaining 49%.  Presently, Berkshire owns approximately 26.7% of

outstanding Kraft Heinz common stock, while 3G owns approximately 23.9%. Public investors own approximately 49.4% of Kraft Heinz's shares.

31.    Berkshire is a holding company whose subsidiaries are engaged in numerous diverse business activities including insurance business, a freight rail transportation business, and a group of utility and energy generation and distribution business. 3G is a Brazilian-American private equity firm known for achieving significant cost reduction in companies under its management by, among other things, implementing ZBB at its portfolio companies. ZBB is a process whereby budgets are determined only after all anticipated expenses in a given period have been justified as being necessary, irrespective of what the budget may have been in a prior period.

32.    Under the terms of the merger, each share of outstanding Kraft common stock was converted into the right to receive one share of common stock of Kraft Heinz common stock. Additionally, Kraft declared a special cash dividend equal to $16.50 per share of Kraft common stock to shareholders of Kraft. The aggregate special dividend payment of approximately $10 billion was funded by an equity contribution by Berkshire and 3G.

33.    Pursuant to the merger agreement, Kraft Heinz's Board of Directors consisted of five members appointed by the Kraft Board of Directors, as well as six members appointed by the Heinz Board. Currently, Kraft Heinz's Board includes three co-founders and partners of 3G, including Board Chairman, Alexandre Behring, Jorge Paulo Lehman, and Marcel Herrmann Telles. One member of the Kraft Heinz's Board, Gregory Abel, has served on the Board of Directors of Berkshire since January 2018. Abel previously served as CEO of Berkshire Hathaway Energy Company. Another member of the Kraft Heinz Board, Tracy Britt Cool, previously served as Financial Assistant to Warren Buffet, Berkshire's Chairman, and currently serves as CEO of a Berkshire subsidiary.

34.     After the merger, Kraft Heinz was led by an executive team whose most senior members were affiliated (as partners or otherwise) with 3G.  For instance, Defendant Hees became Kraft Heinz's CEO after serving as CEO of Heinz since its formation in June 2013.  Defendant Hees is also a partner of 3G.  Defendant Basilio became Executive Vice President and CFO of Kraft Heinz after previously serving as CFO of Heinz since its formation in June 2013.  Likewise, Pedro Drevon became President of Kraft Heinz's Latin America Zone after serving as a partner of 3G.  Further, on October 1, 2017, Defendant Knopf assumed Defendant Basilio's responsibilities and became Executive Vice President and CFO at Kraft Heinz.  Defendant Knopf has been a partner of 3G since July 2012 and has held various roles at 3G from 2013 to 2015.

35.      Shortly after the merger, Defendants adopted 3G's cost reduction initiatives and began integrating the operations of Kraft and Heinz.  These cost cutting initiatives were implemented to lower costs and increase Kraft Heinz's profitability, even though the Company's sales were declining.

### B.     Defendants' Fraudulent Scheme

36.     Defendants touted their ZBB cost cutting initiatives as a way to lower costs and increase profitability—but not at the expense of top-line revenue growth for the newly acquired Kraft brands.  Yet, Defendants' plans were doomed to fail because of the changing nature of the packaged foods industry. Consumer preferences had shifted away from processed foods—a Kraft staple—toward healthier options.  In order to keep up with changing consumer preferences, Kraft Heinz needed to use product innovation as a mechanism to maintain and bolster sales.

37.     From the inception of the merger, Defendants recognized the importance of product innovation.  Indeed, Defendants promised that their cost cutting initiatives would not eliminate the new product innovation that was required to maintain top-line growth.  Even in the face of

quarterly declines in revenue, they maintained that growth was just around the corner. These assurances were false.

38.     In fact, from the outset, Kraft experienced significant sales declines as consumers shifted to organic brands and lower-priced private label offerings. By no later than the second quarter of 2017, Kraft Heinz began to suffer an impairment in the value of its Kraft brands as revenues continued to decline in the face of consumer sentiment and the lack of new product innovation that would allow Kraft to keep up with changing consumer tastes. While Kraft's brands were suffering sales declines and losses in market share, those same brands also were experiencing supply-chain dislocations and cost increases. This combination of factors in conjunction with the Company's cost cutting initiatives reduced profitability so significantly—and seemingly irreversibly—that the value of Kraft brands was impaired.

39.     For example, Kraft Heinz knew that the value of its Oscar Mayer cold cuts and Kraft cheese businesses were both impaired as revenues declined and the Company declined to invest the resources necessary for product innovation and distribution, and new equipment because of its singular focus on cutting costs.

40.     At no point during the Class Period, did Defendants disclose that they knew the value of Kraft Heinz's Oscar Mayer cold cuts business was impaired due to Defendants failure to invest in product innovation. Likewise, Defendants failed to disclose that they knew the Kraft cheese business was impaired when the business suffered declining sales because of aggressively priced private-label offerings and cheaper brands sold by e-commerce retailers.

41.     Similarly, not once during the Class Period, did Defendants disclose that they knew the goodwill associated with Kraft Heinz Canada Retail business was impaired when sales for that

12

business were declining and operating suffered from product discontinuations, higher input costs, and higher promotional expenses.

42.     Moreover, as Defendants scheme was about to begin unraveling with its revelations in the fourth quarter of 2018 (*see infra* Section IV.D), on August 7, 2018, 3G Capital sold **20.6 million** shares of Kraft Heinz common stock at a price of $59.85 per share, reaping over **$1.2 billion** in gains.

**C.     Materially False and Misleading Statements Issued During the Class Period**

       **1.     2015 Statements**

43.     The Class Period begins on July 6, 2015, when the shares of newly-formed Kraft Heinz began trading at an opening price of $71.00 per share.  Shortly before this date, on April 10, 2015, Heinz filed a preliminary registration statement and prospectus on Form S-4 with the SEC with respect to the shares of Heinz common stock to be issued to Kraft shareholders pursuant to the merger agreement.  The Form S-4 touted the benefits of the merger, including:

> The synergies and other benefits to the combined company that could result from the merger, including an enhanced competitive and financial position, increased diversity and depth in its product line and geographic areas (providing for significant international growth opportunities) and the potential to realize, according to Heinz management, an estimated $1.5 billion in annual cost savings from the increased sale of the new organization, the sharing of best practices and cost reductions by the end of 2017.

44.     On November 5, 2015, Kraft Heinz held a conference call with analysts and investors to discuss the Company's first quarterly financial results as a combined company. During the conference call, Defendant Hees stated that the Company is "finding significant opportunities . . . embedded in the $1.5 billion" in projected cost-savings announced at the time of the merger in the Form S-4.

45.     During this same conference call, the Company presented a slide representing that Kraft Heinz was "[e]ffectively managing pricing and input costs" and would "[c]ontinue to deliver productivity and restructuring savings."   The presentation also highlighted Kraft Heinz's "Procurement centralization" as one of the drivers of its "Best in Class Margins."

46.     The statements contained in ¶¶ 43-45 were materially false and misleading when made because: (i) Defendants misrepresented that Kraft Heinz's introduction of ZBB and other cost-saving measures would deliver profitability while simultaneously maintaining base business momentum; (ii) Defendants failed to disclose known trends that were negatively impacting the Company's ability to achieve organic growth and profitability; and (iii) Defendants misrepresented the ability of the Company's pipeline of new products to generate organic growth.  As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

**2.      2016 Statements**

47.     On February 25, 2016, Kraft Heinz hosted a conference call with analysts and investors to discuss the Company's fourth quarter 2015 financial results.  During the conference call, Defendant Basilio touted that the Company "realized roughly $125 million in savings in 2015."   Additionally, Hees continued to assure the market that sales and revenues were not slowing, by stating, "when you see our market share performance . . . we have been growing quite stable."

48.     On May 4, 2016, Kraft Heinz hosted a conference call with analysts and investors to discuss the Company's first quarter 2016 financial results.   During the conference call, Defendant Hees touted that "[r]egarding the integration program, I'm also happy to report that our savings are coming faster than we were expecting roughly $225 million in Q1."  Similarly, the

Company's accompanying slide presentation emphasized that Kraft Heinz was "[o]n pace to fully realize $1.5 billion cost savings in 2017."

49.     Additionally, during this same conference call, Hees praised the Company's "strong pipeline" of new products with "trend-bending ability."  Hees assured investors that the Company's recent "launches are starting to gain traction in the marketplace, and we have more to come."

50.     On August 4, 2016, Kraft Heinz hosted a conference call with analysts and investors to discuss the Company's second quarter 2016 financial results. During the conference call, an analyst questioned how Kraft Heinz was dealing with changing consumer preferences.  Defendant El-Zoghbi answered, "the way we are dealing with that is by investing more in new product development programs in line with where consumer trends are now, and where they are going in the future. . . . This is the best way to deal with the consumer."

51.     On November 3, 2016, Kraft Heinz hosted a conference call with analysts and investors to discuss the Company's third quarter of 2016 financial results. During the conference call, Defendant Basilio stated, "[b]ased on what we've already seen in the marketplace, we remain confident in our ability to drive improvements in our top-line trends in existing markets." Similarly, Hees represented that "we really believe we have a solid organic path here to create value."

52.     The statements contained in ¶¶ 47-51 were materially false and misleading when made because: (i) Defendants misrepresented that Kraft Heinz's introduction of ZBB and other cost-saving measures would deliver profitability while simultaneously maintaining base business momentum; (ii) Defendants failed to disclose known trends that were negatively impacting the Company's ability to achieve organic growth and profitability; and (iii) Defendants misrepresented

15

the ability of the Company's pipeline of new products to generate organic growth. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

### 3.      2017 Statements

53.      On February 15, 2017, Kraft Heinz hosted a conference call with analysts and investors to discuss the Company's fourth quarter and full year 2016 financial results.  During the conference call, Defendant Basilio reassured investors that "we don't need another acquisition to drive value [a]nd, again, as Bernardo [Hees] mentioned, we have brands that can sell well."

54.      The statement contained in ¶ 53 was materially false and misleading when made because: (i) Defendants misrepresented that Kraft Heinz's introduction of ZBB and other cost-saving measures would deliver profitability while simultaneously maintaining base business momentum; (ii) Defendants failed to disclose known trends that were negatively impacting the Company's ability to achieve organic growth and profitability; and (iii) Defendants misrepresented the ability of the Company's pipeline of new products to generate organic growth.  As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

55.      On May 3, 2017, Kraft Heinz filed a Form 8-K announcing the Company's first quarter 2017 financial results.  Within the Form 8-K, Defendant Hees is quoted as stating, "[a]lthough our top line results in the first quarter reflect a slow start to the year, we remain on track with our key initiatives."  Hees also stated, "[w]e are delivering product innovations, renovations, and geographic expansion that positions Kraft Heinz to drive organic sales growth for the balance of 2017 and beyond."

56.      On that same day, Kraft Heinz held a conference call with analysts and investors to discuss the Company's financial results.  During the conference call, Defendant Hees stated that,

"the result of our 2017 pipeline is on track." Defendant Hees further added, "we remain on track with our cost savings initiatives."

57. During the conference call, Defendant Hees also dismissed concerns over the Company's declining revenues stating, in part, "actually our model has been working for many, many, many years, decades and so. And if you look at the facts and data, you're going to see growing organic rates pretty much in line with average with our peers. But with the profitability level we have today allows us to invest strongly behind our brands and product quality."

58. The statements contained in ¶¶ 55-57 were materially false and misleading when made because: (i) Defendants misrepresented that Kraft Heinz's introduction of ZBB and other cost-saving measures would deliver profitability while simultaneously maintaining base business momentum; (ii) Defendants failed to disclose known trends that were negatively impacting the Company's ability to achieve organic growth and profitability; and (iii) Defendants misrepresented the ability of the Company's pipeline of new products to generate organic growth. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

59. On May 4, 2017, Kraft Heinz filed with the SEC its Form 10-Q for the quarter ended April 1, 2017 (the "Q1 2017 Form 10-Q") signed by Defendants Basilio and Skinger. The Q1 2017 Form 10-Q stated that there was "no impairment of goodwill as a result of our testing" and "no impairment of indefinite-lived intangibles as a result of our testing."

60. The statements contained in ¶ 59 were materially false and misleading when made because: (i) Defendants failed to disclose known trends that resulted in the intangible asset impairments associated with the Company's Oscar Mayer and Kraft brands; and (ii) Defendants failed to disclose known trends that resulted in the goodwill impairments affecting the Company's

U.S. Refrigerated and Canada Retail divisions. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

61. On November 1, 2017, Kraft Heinz hosted a conference call with analysts and investors to discuss the Company's financial results for the third quarter of 2017. During the conference call, Defendant Hees stated, "our plans and our progress remains on track" and "we remain confident in our ability to drive sustainable, profitable growth going forward."

62. The statement contained in ¶ 61 was materially false and misleading when made because: (i) Defendants misrepresented that Kraft Heinz's introduction of ZBB and other cost-saving measures would deliver profitability while simultaneously maintaining base business momentum; (ii) Defendants failed to disclose known trends that were negatively impacting the Company's ability to achieve organic growth and profitability; (iii) Defendants misrepresented the ability of the Company's pipeline of new products to generate organic growth; (iv) Defendants failed to disclose known trends that resulted in the intangible asset impairments associated with the Company's Oscar Mayer and Kraft brands; and (v) Defendants failed to disclose known trends that resulted in the goodwill impairments affecting the Company's U.S. Refrigerated and Canada Retail divisions. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

### 4. 2018 Statements

63. On February 16, 2018, Kraft Heinz filed a Form 8-K with the SEC announcing the Company's financial results for the fourth quarter and full year results of 2017. Within the Form 8-K, Defendant Hees stated, "[w]e made significant improvements in many of our businesses" that "should help further advantage our brands and grow our business in 2018 and beyond."

64. On that same day, the Company hosted a conference call with analysts and investors to discuss the announced financial results. During this conference call, Defendant Hees reiterated that Kraft Heinz was "set up for further organic gains going forward."

65. On May 2, 2018, Kraft Heinz filed a Form 8-K with the SEC announcing the Company's financial results for the first quarter of 2018. Within the announcement, Defendant Hees is quoted as stating, "[t]he initial successes we're seeing in the marketplace, together with the strong investments we're making in marketing, new product innovation, and capability-building, give us increased confidence in delivering the top- and bottom-line growth we expect in 2018."

66. Also on that same day, Kraft Heinz hosted a conference call with analysts and investors to discuss the Company's first quarter 2018 financial results. During this conference call, Defendant Hees stated that apart from several "transitory factors," "we are seeing ongoing improvement in consumption trends in most countries and in most of the key categories that we believe will drive both top and bottom-line growth into the second half of the year." Similarly, during this conference call, Defendant Knopf specifically cited "Oscar Mayer cold cuts" as one of the "tangible drivers of the turnaround in the second half of 2018."

67. During this conference call, Defendant Knopf also attempted to calm investors stating, "[w]e're happy with the performance in Q1. We're running consistent with our plan for the year, and again, that plan is going to be very second half weighted with the three kind of tangible drivers that I talked about" including "cold cuts." Defendant Hees added that "the disruptive market and changing channels [and] consumer habits and so on, that's happening for quite some time" and highlighted "the Kraft Brand" as "giving us a lot of excite[ment] behind Kraft's new offers in cheese and other segments that can be very relevant."

68.     On August 3, 2018, Kraft Heinz filed a Form 8-K with the SEC announcing the Company's second quarter 2018 financial results.  Within the Form 8-K, Hess is quoted as stating, "[w]e believe we are now in a position to drive sustainable top-line growth . . . And while cost inflation on many fronts has been holding back our bottom line, we expect our profitability to improve by year-end, with further momentum into 2019."

69.     Additionally, Kraft Heinz filed its second quarter 2018 Form 10-Q (the "2Q 2018 Form 10-Q"), signed by Defendants Knopf and Garlati, with the SEC.  Within the 2Q 2018 Form 10-Q, the Company reported that it tests both goodwill and intangible assets for impairment at least annually in the second quarter or when a triggering event occurs. The 2Q 2018 Form 10-Q disclosed that Kraft Heinz had recorded a minor "non-cash impairment loss of $101 million . . . due to net sales and margin declines related to the *Quero* brand in Brazil."  The Company also identified that "two brands (*ABC* and *Smart Ones*) each had excess fair value over its carrying value of less than 10%."

70.     On that same day, Kraft Heinz hosted a conference call with analysts and investors to discuss the Company's second quarter 2018 financial and operating results. During this conference call, Defendant Hees stated, that the "slightly better net sales than expected" in the second quarter "was driven by encouraging, ongoing improvement in retail consumption trends in most countries and most categories."  Hees highlighted that "[i]n the United States, we saw consumption trends improve as Q2 unfolded" representing that as "cold cuts activity and distribution improves, we're targeting top line growth in the third quarter."

71.     The statements contained in ¶¶ 63-70 were materially false and misleading when made because: (i) Defendants misrepresented that Kraft Heinz's introduction of ZBB and other cost-saving measures would deliver profitability while simultaneously maintaining base business

momentum; (ii) Defendants failed to disclose known trends that were negatively impacting the Company's ability to achieve organic growth and profitability; (iii) Defendants misrepresented the ability of the Company's pipeline of new products to generate organic growth; (iv) Defendants falsely stated that "main-stays like Oscar Mayer [and] Kraft cheese" were "tangible drivers of [a] turnaround in the second half of 2018"; (v) Defendants failed to disclose known trends that resulted in the intangible asset impairments associated with the Company's Oscar Mayer and Kraft brands; and (vi) Defendants failed to disclose known trends that resulted in the goodwill impairments affecting the Company's U.S. Refrigerated and Canada Retail divisions. As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

### D. The Truth Begins to Emerge

72. On November 1, 2018, shareholders began to learn the truth about Kraft Heinz's true prospect for profitable growth, when the Company announced that its EPS of $0.78 per share fell short of consensus estimates by nearly 4%, while its EBITA missed analysts' consensus estimates by approximately $100 million, or 7%.

73. Nevertheless, on November 1, 2018, Kraft Heinz filed a Form 8-K announcing its third quarter 2018 financial results. In the Form 8-K, Hees states, "[w]hile a number of one-off factors . . . held back profit in the quarter, we remain confident that we are well-positioned to deliver sustainable, profitable growth going forward."

74. Moreover, during Kraft Heinz's quarterly conference call later that day, Defendants Hees and Knopf attempted to reassure investors regarding Kraft Heinz's prospects for profitable growth. Specifically, Defendant Hees assured investors that "we believe and are confident our Q3 results show that the turnaround of our top line performance is firmly underway, not just in terms of headline organic growth, but also real volume growth." Defendant Knopf similarly noted "for

2019, we do expect a much better balance of top- and bottom-line growth going forward [and] [i]n 2018, we've had a number of transitory issues that we don't expect to repeat." With respect to profitability, Hees assured investors that "we are equally confident that profitability will improve going forward, as one-off negative factors from Q3 fall away . . . and I believe that are in the path to sustainable, profitable growth, and driven by the fact that we are adapting the company with speed."

75.     During the same conference call, Defendant Knopf responded to analysts concerns over inconsistent results stating, "for 2019, we do expect a much better balance of top- and bottom-line growth going forward [and] [i]n 2018, we've had a number of transitory issues that we don't expect to repeat." At the end of the call, Defendant Hees reiterated, "we believe [the Company's third quarter 2018 results] can be sustainable in the coming months and quarters, we'll continue to see acceleration in share, in volumes and in the commercial performance in general."

76.     Despite Defendants' attempts to assuage shareholder concerns, the price of Kraft Heinz common stock fell $5.47 or 9.7% in response to the poor results, from a close of $56.20 per share on November 1, 2018, to close at $50.73 per share on November 2, 2018.

77.     Despite the partial revelation of certain aspects of Defendants' fraudulent scheme, the statements contained in ¶¶ 72-76 were materially false and misleading when made because: (i) Defendants failed to disclose known trends that were negatively impacting the Company's organic sales growth and profitability; (ii) Defendants failed to disclose known trends that resulted in the intangible asset impairments associated with the Company's Oscar Mayer and Kraft brands; and (iii) Defendants failed to disclose known trends that resulted in the goodwill impairments affecting the Company's U.S. Refrigerated and Canada Retail divisions. As a result of the foregoing,

Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

78.     On November 2, 2018, Kraft Heinz filed its third quarter Form 10-Q (the "3Q 2018 Form 10-Q"), signed by Defendants Knopf and Garlati, with the SEC.  In the 3Q 2018 Form 10-Q, the Company disclosed a minor non-cash impairment loss of $215 million related to its *Smart Ones* brand.  The Company also stated, "[n]o events occurred during the period ended September 29, 2018 that indicated it was more likely than not that our other indefinite-lived intangible assets were impaired."  Similarly, Kraft Heinz stated, "[n]o events occurred during the period ended September 29, 2018 that indicated it was more likely than not that our goodwill was impaired."

79.     Despite the partial revelation of certain aspects of Defendants' fraudulent scheme, the statements contained in ¶ 78 were materially false and misleading when made because: (i) Defendants failed to disclose known trends that resulted in the intangible asset impairments associated with the Company's Oscar Mayer and Kraft brands; and (ii) Defendants failed to disclose known trends that resulted in the goodwill impairments affecting the Company's U.S. Refrigerated and Canada Retail divisions.  As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

80.     Investors learned more about Kraft Heinz's true prospects on February 21, 2019, when the Company announced its financial results for the fourth quarter and full year 2018, which fell well below expectations.  The Company reported organic net sales growth of 2.4%, with an EPS of $0.84, which was $0.10 below consensus estimates, as well as revenues $50 million below consensus expectations.  Kraft Heinz also announced that the Company's poor performance required the Company to take a $15.4 billion non-cash impairment charge related to the goodwill

and intangible assets driven "primarily [by] the Kraft and Oscar Mayer trademarks" and due "primarily [to] U.S. Refrigerated and Canada Retail."

81.     Additionally, the Company disclosed that, in October 2018, it had received a subpoena from the SEC "associated with an investigation into the Company's procurement area, more specifically the Company's accounting policies, procedures, and internal controls related to its procurement function, including, but not limited to, agreements, side agreements, and changes or modifications to its agreements with its vendors."  Kraft Heinz explained that, because of an internal investigation, the Company recorded a $25 million increase to COGS due to its misstatement of previous COGS figures.

82.     Further, the Company announced it was lowering its quarterly dividend by $0.225, to $0.40 per share.

83.     On this news, the price of Kraft Heinz common stock fell $13.67 per share, or almost 28%, from a close of $48.18 per share on February 21, 2019, to close at $34.95 per share on February 22, 2019.

84.     The market for Kraft Heinz common stock was open, well-developed, and efficient at all relevant times.  Due to the alleged materially false and/or misleading statements, and/or omissions of material fact alleged herein, Kraft Heinz common stock traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased Kraft Heinz common stock relying upon the integrity of the market price of Kraft Heinz common stock and market information relating to Kraft Heinz, and have been damaged thereby.

### E.  Kraft Heinz's Class Period SEC Filings Violate SEC Disclosure Regulations

85.     Item 8 of Form 10-K and Item 1 of Form 10-Q, via reference to Regulation S-X , 17 C.F.R. §210, required Kraft Heinz to file with the SEC financial statements prepared in

conformity with Generally Accepted Accounting Principles ("GAAP") during the Class Period. Regulation S-X, 17 C.F.R. §210.4-01 (a)(1), states that financial statements filed with the SEC that are not prepared in conformity with GAAP are presumed to be misleading and inaccurate.

86.     During the Class Period, the financial statements Kraft Heinz issued to investors and filed with the SEC on Forms 10-K and 10-Q improperly accounted for costs of products sold and intangible asset impairments, including goodwill, were materially misstated, and presented in violation of GAAP.

87.     Item 7 of Form 10-K and Item 2 of Form 10-Q required Kraft Heinz to furnish the information called for under Item 303 of Regulation S-K, 17 C.F.R. §229.303, *Management's Discussion and Analysis of Financial Condition and Results of Operations* ("MD&A") during the Class Period.  In 1989, the SEC issued interpretative guidance associated with the requirements of Item 303 of Regulation S-K, which states, in part:

> A disclosure exists where a trend, demand, commitment, event or uncertainty is both presently known to management and reasonably likely to have material effects on the registrant's financial condition or results of operation.

88.     The MD&A Kraft Heinz filed with the SEC on Forms 10-K and 10-Q contained materially false and misleading disclosures about the Company's operating performance and failed to disclose material events and uncertainties associated with Kraft Heinz's major brands and internal control weaknesses, which were known to management at the time and were reasonably likely to have a material effect on the Company's future operating results.

89.     Item 1A of Forms 10-K and 10-Q required Kraft Heinz to furnish the information called for under Item 503 of Regulation S-K, 17 C.F.R. §229.503, *Risk Factors*. Item 503 of Regulation S-K required Kraft Heinz to disclose the most significant matters making an investment in the Company risky.

90. The Forms 10-K and 10-Q Kraft Heinz filed with the SEC during the Class Period failed to disclose material risks associated with its major brands and material internal control weaknesses that made an investment in the Company risky.

91. Item 9A of Form 10-K and Item 4 of Form 10-Q required Kraft Heinz to furnish the information called for under Item 307 of Regulation S-K, 17 C.F.R. §229.307, *Disclosure Controls and Procedures*, and Item 308 of Regulation S-K, 17 C.F.R. §229.308, *Internal Control over Financial Reporting*, during the Class Period.

92. Item 307 of Regulation S-K required Kraft Heinz's Forms 10-K and 10-Q during the Class Period to disclose the conclusions of Defendants Hees, Basilio, and Knopf regarding the effectiveness of Kraft Heinz's disclosure controls and procedures, defined by relevant regulation as the controls and procedures designed to ensure that information required to be disclosed in reports filed with the SEC is appropriately recorded, processed, summarized, and reported.

93. During the Class Period, Kraft Heinz falsely and misleadingly represented in its Forms 10-K and 10-Q that its disclosure controls were operating effectively when, as the Company has now admitted, they were not. During the Class Period, these materially false and misleading representations were certified by Defendants Hees, Basilio, and Knopf.

94. Item 308 of Regulation S-K required Kraft Heinz's Forms 10-K and 10-Q during the Class Period to disclose, among other things, the conclusions of Defendants Hees, Basilio, and/or Knopf regarding the effectiveness of Kraft Heinz's internal control over financial reporting, defined by relevant regulation as:

- The process designed by, or under the supervision of, the issuer's principal executive and principal financial officers, or persons performing similar functions, and effected by the issuer's board of directors, management and other personnel, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in

accordance with generally accepted accounting principles and includes those policies and procedures that:

- Pertain to the maintenance of records that in reasonable detail accurately and fairly reflect the transactions and dispositions of the assets of the issuer;

- Provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the issuer are being made only in accordance with authorizations of management and directors of the issuer; and

- Provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the issuer's assets that could have a material effect on the financial statements.

95.     During the Class Period, Kraft Heinz falsely and misleadingly represented in its Forms 10-K and 10-Q that its internal controls over financial reporting were operating effectively when, as the Company has now admitted, it operated with material weaknesses.  These materially false and misleading representations were certified by Defendants Hees, Basilio, and/or Knopf during the Class Period.

## V.     SCIENTER ALLEGATIONS

96.      During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants: (i) knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; (ii) knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

97.     The Individual Defendants permitted Kraft Heinz to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's stock.

98.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Kraft Heinz, their control over, receipt, and/or modification of Kraft Heinz's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Kraft Heinz, participated in the fraudulent scheme alleged herein.

99.     The Individual Defendants Hees, Basilio, and Knopf who, as executive officers of the Company, knew or recklessly ignored facts related to the core operations of Kraft Heinz, which can be imputed to Kraft Heinz.

100.     Additionally, Defendants' scienter is established by Defendants Hees, Basilio, and Knopf's certifications under the Sarbanes-Oxley Act of 2002, which acknowledge their responsibility to investors for establishing and maintaining controls to ensure that material information about Kraft Heinz was made known to them and that the Company's disclosure related controls and internal control over financial reporting were operating effectively.

101.     Scienter is further established by Defendants' financial motive to engage in the course of conduct alleged herein as to allow 3G Global Food Holdings, an affiliate of Defendant 3G, to sell more than $1.2 billion of Kraft Heinz common stock at an artificially inflated price in August 2018.

102.     Finally, scienter is established by the massive size of the write-down in February 2019, when just months earlier, the Company had allegedly conducted an impairment analysis and found no material impairment of its assets.  No reasonable inference can support any assertion by the Defendants that there was no impairment and then within a matter of months, much of the value of the entire Kraft Heinz business was deemed to be worthless.

103.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Kraft Heinz common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme deceived the investing public regarding the Company's financial prospects, and the intrinsic value of Kraft Heinz common stock, and caused Plaintiff and members of the Class to purchase Kraft Heinz common stock at artificially inflated prices.

## VI.     CLASS ACTION ALLEGATIONS

104.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Kraft Heinz common stock during the Class Period and were damaged thereby. Excluded from the Class are Defendants and their families, the directors and officers of Kraft Heinz, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

105.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Kraft Heinz common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Kraft Heinz and/or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Hundreds or thousands of individuals located geographically throughout the country hold these shares. Joinder would be highly impracticable.

106.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a.      Whether the Exchange Act was violated by Defendants;

b.      Whether Defendants omitted and/or misrepresented material facts;

c.      Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d.      Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.      Whether the prices of Kraft Heinz common stock were artificially inflated; and

f.      The extent of damage sustained by Class members and the appropriate measure of damages.

107.    Plaintiff's claims are typical of the claims of the members of the Class because all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the federal securities laws complained of herein.

108.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

109.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VII. LOSS CAUSATION

110. During the Class Period, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Kraft Heinz common stock, as detailed herein, and operated as a fraud or deceit on Class Period purchasers of Kraft Heinz common stock by failing to appropriately disclose problems undermining the profitability of the Company as a whole.

111. For instance, as alleged above, on November 1, 2018, Defendants announced that the Company's EPS of $0.78 per share fell short of consensus estimates by nearly 4%, while its EBITA missed analysts' consensus estimates by approximately $100 million, or 7%. In response to this news, Kraft Heinz's stock price declined $5.47 per share, or 9.7% from a close of $56.20 per share on November 1, 2018, to close at $50.73 per share on November 2, 2018.

112. Moreover, on February 21, 2019, Defendants disclosed that the Company recorded non-cash impairment charges of $15.4 billion related to goodwill and intangible assets driven primarily by the Kraft and Oscar Mayer trademarks, as well as the U.S. Refrigerated and Canada Retail. Additionally, the Company disclosed that it received a subpoena from the SEC in October 2018, associated with its investigation into Kraft Heinz's accounting policies, procedures, and internal controls over financial reporting and that the Company had been operating material weaknesses in its system of internal controls over financial reporting.

113. As a result of this news, the price of Kraft Heinz common stock declined approximately 27.5% from $48.18 per share, on February 21, 2019 to $34.95 per share, on February 22, 2019.

114. When Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Kraft Heinz common stock fell precipitously, as the prior artificial inflation came out of the price. The declines in Kraft Heinz's stock price were the direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the share price declines negate any inference that the losses suffered by Plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or Company specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of the Company's stock and the subsequent significant decline in the value of the Company's stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## VIII. APPLICABILITY OF FRAUD-ON-THE-MARKET DOCTRINE

115. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

    a.    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.    The omissions and misrepresentations were material;

    c.    Kraft Heinz's common stock traded in an efficient market;

    d.    The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of Kraft Heinz's common stock; and

    e.    Plaintiff and other members of the Class purchased Kraft Heinz common stock between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

116.    At all relevant times, the market for Kraft Heinz common stock was efficient for the following reasons, among others: (i) as a regulated issuer, Kraft Heinz filed periodic public reports with the SEC; and (ii) Kraft Heinz regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## IX.    THE STATUTORY SAFE HARBOR AND BESPEAKS CAUTION DOCTRINE ARE INAPPLICABLE

117.    Defendants' verbal and written "Safe Harbor" warnings accompanying its oral and written forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

118.    Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Kraft Heinz who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

X.      **CLAIMS FOR RELIEF**

**COUNT I**
**Violation of Section 10(b) of the Exchange Act and**
**Rule 10b-5 against Kraft Heinz and the Individual Defendants**

119.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

120.    During the Class Period, Kraft Heinz and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

121.    Kraft Heinz and the Individual Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Kraft Heinz common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons.

122.    As a result of the foregoing, the market price of Kraft Heinz common stock was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Kraft Heinz common stock during the Class Period in purchasing Kraft Heinz common stock at prices that were artificially

inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

123. Had Plaintiff and the other members of the Class been aware that the market price of Kraft Heinz common stock had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company and the Individual Defendants did not disclose, they would not have purchased Kraft Heinz common stock at the artificially inflated prices that they did, or at all.

124. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

**COUNT II**
**Violation of Section 20(a) of the Exchange Act against**
**the Individual Defendants and 3G**

125. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

126. During the Class Period, the Individual Defendants and 3G participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

127. As officers, directors and/or control persons of a publicly owned company, the Individual Defendants and 3G had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

128. Because of their positions of control and authority as senior officers or controlling shareholders, the Individual Defendants and 3G were able to, and did, control the contents of the

various reports, press releases, and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants and 3G exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants and 3G therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Kraft Heinz common stock.

129.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

### COUNT III
### Violation of Section 20A of the Exchange Act against 3G

130.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein. This claim is asserted against Defendant 3G on behalf of Plaintiffs who were damaged by 3G's insider trading.

131.    As detailed herein, Defendant 3G, by virtue of its positions as an insider of Kraft Heinz, had access to, and was in possession of, material non-public information about Kraft Heinz throughout the Class Period.

132.    Defendant 3G took advantage of its possession of material, non-public information regarding Kraft Heinz and on August 7, 2018, sold at least 20.6 million shares of Kraft Heinz common stock at a price of $59.85 per share, gaining over $1.2 billion.

133.    All members of the Class who purchased shares of Kraft Heinz common stock contemporaneously with sales of Kraft Heinz common stock by Defendant 3G: (i) have suffered damages because, in reliance on the integrity of the market, they paid artificially inflated prices for Kraft Heinz common stock as a result of the violations of Sections 10(b) and 20(a) of the

Exchange Act as alleged herein; and (ii) would not have purchase Kraft Heinz common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially inflated by Defendant 3G's false and misleading statements and concealment. At the time of the purchases of Kraft Heinz common stock by members of the Class who purchased them, the fair and true market value of Kraft Heinz common stock was substantially less than the price paid by these Class members.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure, designating Plaintiff as Lead Plaintiff, and certifying Plaintiff as a class representative under Rule 23 and Plaintiff's Counsel as Lead Counsel;

b. Awarding compensatory damages and equitable relief in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

Dated: March 15, 2019                    Respectfully submitted,

**QUINN EMANUEL URQUHART
& SULLIVAN, LLP**

By: /s/ Jonathan C. Bunge
Jonathan C. Bunge (Il. Bar #6202603)
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Fax: (312) 705-7401
jonathanbunge@quinnemanuel.com

Daniel L. Brockett
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100
danbrockett@quinnemanuel.com

*Liaison Counsel for Plaintiff Iron Workers
District Council (Philadelphia and Vicinity)
Retirement and Pension Plan*

**KESSLER TOPAZ MELTZER
& CHECK, LLP**
Sharan Nirmul
Darren J. Check
Jonathan R. Davidson
Stephanie M. Grey
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Fax: (610) 667-7056
snirmul@ktmc.com
dcheck@ktmc.com
jrdavidson@ktmc.com
sgrey@ktmc.com

*Counsel for Plaintiff Iron Workers District
Council (Philadelphia and Vicinity) Retirement
and Pension Plan*

38